UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

     Plaintiff,

v.                                 Case No. 2:25-cv-00061-KCD-DNF

MATTHEW WOELK, in personal and
professional capacity; CITY OF
PUNTA GORDA, CHARLOTTE
COUNTY EVENT MANAGER,
MICHELLE MALDONADO-
FLORES, in personal and professional
capacity, RON JANZ, in personal and
professional capacity, WEISER
SECURITY,

     Defendants.

_____/

**MATTHEW WOELK AND CITY OF PUNTA GORDA'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

     Defendant, Matthew Woelk, in his individual capacity, and the City of Punta

Gorda, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully request this

Honorable Court enter an order dismissing the Plaintiff's amended complaint with

prejudice.

1

## Background

Plaintiff, allegedly a "well-seasoned" "journalist,"[1] brings yet another lawsuit against the City of Punta Gorda and its employees.[2] This time, Plaintiff alleges he received a "tip" from a "friend" that he was being investigated for Second Amendment activities.[3] Plaintiff took it upon himself to "break this news story" and "inform the public about his findings."[4] He then traveled to the Charlotte County Event Center ("Event Center") to "protest" "engage in political speech," the "publication/dissemination of journalism," and the "collection of content."[5] He alleges he records all interactions with government officials and posts it to social media – according to him, all of these actions in front of the Event Center reflect a viewpoint of "citizen journalism" or "government accountability."[6]

---

[1] (Doc. 75, Pg. 3 (Plaintiff did not number the paragraphs in the second amended complaint))

[2] Although Plaintiff is proceeding without a lawyer, he has plenty of experience litigating in federal court. *See Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-KCD-DNF; *Sheets v. Jimenez et al.*, 2:24-cv-704-SPC; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-KCD-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-KCD-DNF; *Sheets v. Martin et al.*, 2:25-cv-444-SPC-NPM; *Sheets v. Lipker et al.*, 2:25-cv-493-KCD-DNF; *Sheets v. Pribble*, 2:25-cv-500-KCD-NPM; *Sheets v. Woelk et al.*, 2:25-cv-578-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-583-SPC; *Sheets v. Woelk et al.*, 2:25-cv-611-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-612-KCD-NPM; *Sheets v. Angelini et al.*, 2:25-cv-644-KCD-DNF; *Sheets v. Gray, et al.*, 2:25-cv-667-JES-DNF; *Sheets v. Renz et. al.*, 2:25-cv-01000-KCD-DNF

[3] (Doc. 75, Pg. 3)

[4] (Doc. 75, Pgs. 3-4)

[5] (Doc. 75, Pg. 4)

[6] (Doc. 75, Pg. 4)

Plaintiff then alleges that Ron Janz, (not an employee of the City) called the Punta Gorda Police Department to request a trespass.[7] Officer Woelk eventually arrived on scene and provided Plaintiff with a trespass warning.[8]

Plaintiff now brings the following causes of action against Officer Woelk and the City of Punta Gorda:

- Claim One – First Amendment viewpoint discrimination under 42 U.S.C. §1983

- Claim Two – First Amendment retaliation under 42 U.S.C. §1983

- Claim Three – Fourteenth Amendment – Procedural Due Process violation under 42 U.S.C. §1983

- Claim Four - Conspiracy under 42 U.S.C. §1983

## Grounds for Motion

1. Office Woelk is entitled to qualified immunity, as there was arguable probable cause to support the trespass warning, and no facts to show a causal element between Plaintiff's speech/viewpoint and the trespass.

2. Plaintiff does not plead sufficient facts to show a conspiracy.

3. Plaintiff's claim against the City makes no sense, as the City does not own or control the location of the trespass.

## Memorandum of Law

### I.    Standard

---

[7] (Doc. 75, Pg. 7-9)
[8] (Doc. 75, Pg. 14)

To survive a motion to dismiss, a plaintiff must allege " 'sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."' " *Chapparo v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible if a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And although a court must accept a plaintiff's factual allegations as true, it must not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

*Pro se* parties must comply with the minimum pleading standards set forth in the Federal Rules of Civil Procedure and the Local Rules. *Nawab v. LVNV Funding LLC*, No. 5:12-cv-129-Oc-10PRL, 2012 WL 12918283, at *1 (M.D. Fla. Nov. 19, 2012). A court cannot rewrite an inadequate complaint to plead essential allegations in order to sustain an action. *Pontier v. City of Clearwater, Fla.*, 881 F. Supp. 1565, *1568 (M.D. Fla. April 13, 1995).

## II.    Plaintiff's Amended Complaint Remains a Shotgun Pleading

A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. *Weiland v. Palm Beach County. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in

4

numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). If doing so would promote clarity, Rule 10(b) also mandates that each claim founded on a separate transaction or occurrence . . . be stated in a separate count. The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading." *Weiland*, 792 F.3d at 1320.

Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.  Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1295 (11th Cir. 2018).

The Eleventh Circuit has identified four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  The second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each cause of action or claim for relief" into a different count.  And the final type of shotgun pleading is a complaint that asserts multiple claims against multiple defendants without specifying which of the

defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Plaintiff's complaint falls within at least two types. Each count adopts the factual allegations of all preceding counts, which causes each successive count to carry all that came before it. By the time the reader reaches the final claim against Woelk, it is not clear what facts, if any, are merged into the claim as the complaint adopts "all statements of fact set forth previously." This is only compounded by the fact that Plaintiff completely failed to number the paragraphs of his second amended complaint, which makes an answer impossible. Additionally, the complaint is replete with vague, conclusive, and immaterial facts that are not obviously connected to any cause of action. The Court should once again dismiss the complaint as an impermissible shotgun pleading.

## III.    Officer Woelk is Entitled to Qualified Immunity

### a.  *Qualified Immunity Standard*

Officer Woelk is entitled to qualified immunity. The Supreme Court "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227, (1991) (per curiam)). "Although 'the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need *to shield officials from harassment, distraction, and liability when they perform their duties reasonably*." *Id*. (emphasis added). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation marks and citation omitted).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). Essentially, this boils down to "whether the actions are of a type that fell within the employee's job responsibilities." *Id*. (internal quotation marks and citation omitted). There are two parts to this inquiry: whether the defendant "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id*. (citation omitted). Officer Woelk was indisputably operating in his discretionary capacity. *See also Patrick v. McGuire*, No. 8:24-CV-999-MSS-NHA, 2024 WL 4803217, at *4 (M.D. Fla. Nov. 15, 2024) (officer acted within discretionary authority when she told plaintiff to leave the government office pursuant to the office's policy against video

recording). Once an officer has met that burden, the burden then shifts to the Plaintiff to show 1) that the conduct violated a constitutional right and 2) the right was clearly established. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Plaintiff can show neither of these prongs. In order to demonstrate that a right is "clearly established" a Plaintiff must provide one of the following 1) reliance on a "materially similar decision of the Supreme Court, of the [Eleventh Circuit] or of the supreme court of the state in which the case arose[,]" 2) invocation of a "broader, clearly established principle that controls the novel facts[] of the case[,]" or 3) showing that the officer's acts "so obviously violate the Constitution that prior case law is unnecessary." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023) (cleaned up). "If a plaintiff proceeds under the first or second method, he must point to a court decision." *Id.* "The second and third methods require obvious clarity[,]" meaning "the principle must be so apparent that, even without a case with similar facts to light the way, any competent officer would know that his conduct crossed the line." *Id.* (cleaned up).

"In the past, courts considered those prongs in order. *Corbitt*, 929 F.3d at 1311. Now, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

This is not the first time that the Plaintiff has alleged – and failed – to meet his burden to overcome qualified immunity when suing Punta Gorda officers for trespassing him on dubious First Amendment grounds. *See e.g Sheets v. Presseller, et. al.*,

2:24-cv-00495-JLB-KCD (M.D. Fla. 2024) (Doc. 163); *Sheets v. Jimenez*, 2025 WL 1725954 (M.D. Fla. June 20, 2025).

Boiled down, this suit against Officer Woelk presents one simple question – may an officer rely on the statements of the manager of a property to issue a trespass? The answer for this Court should be a resounding "yes." Nor is it "clearly established" that Officer Woelk may not do so – even if Plaintiff was standing on government property.

> b. *Plaintiff was not trespassed because of First Amendment conduct*

First, Plaintiff cannot and has not shown that he was subject to trespass *because* of some sort of First Amendment activity. This is his burden to prove. *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 n.5, (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."). Rather, the record evidence provided by the Plaintiff illustrates that law enforcement was summoned because private actors called law enforcement, because Plaintiff was *harassing* event patrons. (Doc. 75, Pgs. 8-9). For example, Plaintiff records himself confronting people and telling them to get in "the shower" referring to gas chambers used by the Nazis during the holocaust. (Doc. 75-3, 36:25-37:00). Even Plaintiff's own video explains the reason for the trespass was due to the disturbance he was creating out front and complaints. (Doc. 75-3, 49:04-49:24). And certainly, Plaintiff's video shows him interrupting and accosting patrons of the event center, disrupting the normal flow of foot traffic that would have occurred had he not been present. Plaintiff's own complaint provides the body camera video and the interaction between Maldonado and Woelk – where Maldonado explains that she was

setting up and heard "someone shouting." (Doc. 75, Pg. 16). Plaintiff cannot stand outside a building, harass customers, tell them to go die, and then get upset when private parties call law enforcement crying a violation of his constitutional rights.

c. *The First Amendment does not protect Plaintiff's conduct*

Assuming *arguendo* that Plaintiff was engaged in expressive activity, that does not mean the First Amendment protects his conduct. Nor does it mean that, in the context of qualified immunity, his rights were clearly established at the time. Courts use forum analysis when evaluating First Amendment claims. *See Patrick*, 2024 WL 4803217 at *5. The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). There are several different forums – traditional public forums, designated forums, limited public forums, and nonpublic forums. *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 11 (2018); *McDonough v. Garcia*, 116 F.4th 1319, 1325 (11th Cir. 2024).

Plaintiff believes that he was standing in a "public sidewalk" (Doc. 75, Pg. 3) but that is not dispositive. "Mere physical characteristics of the property cannot dictate forum analysis." *U.S. v. Kokinda*, 497 U.S. 720, 727 (1990). The Government's ownership of property does not automatically open that property to the public. *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981). It is a long-settled principle that governmental actions are subject to a lower level of First Amendment scrutiny when "the governmental function operating ... [is] not the power

10

to regulate or license, as lawmaker, ... but, rather, as proprietor…" *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961).

The instant case is akin to the Supreme Court's previous ruling in *U.S. v. Kokinda*, which held that a sidewalk "leading to the entry of [a publicly owned] post office"—and "constructed solely to provide for the passage of individuals engaged in postal business"—was not a traditional public forum. 497 U.S. 720, 727 (1990).[9] The Court reached that conclusion only after considering the extent to which that particular sidewalk had been "traditionally open to expressive activity"—as well as "its location and purpose[.]" *Id.* at 727–28, (*citing United States v. Grace*, 461 U.S. 171, 179–80, (1983)); *see also Lee*, 505 U.S. at 710, (O'Connor, J., concurring) (noting that *Kokinda* "implicitly reject[ed] the categorical approach by examining whether '[t]he postal sidewalk at issue ... [has] the characteristics of public sidewalks traditionally open to expressive activity' " (*quoting Kokinda*, 497 U.S. at 727)).

Here, as explained to him by Officer Woelk, and understood by Defendants Maldando-Flores and Ron Janz the "sidewalk" that Plaintiff was standing on was event center property. (Doc. 75-3, 49:20-50:01).[10] The purpose of the sidewalk here is not to engage in expressive activity, but to enable patrons to safely traverse the parking lot to the event center steps and engage in whatever business they have within the event center. Like the post office in *Kokinda*, the "sidewalk' Plaintiff is standing on simply

---

[9] See also Greer v. Spock, 424 U.S. 828 (1976) (Holding that even though military base permitted free civilian access to certain unrestricted areas, the base was a nonpublic forum – the presences of sidewalks and streets within the base did not require a finding that it was a public forum)

[10] Plaintiff ostensibly did not like that explanation, prompting him to tell Officer Woelk to "fuck off and die." (Doc. 75-3, 49:27-32).

surrounds the building, it is not a public passage way and only leads from the parking area to the front door of the event center. *See e.g., Kokinda*, 497 U.S. at 727.



There is no evidence here that Charlotte County had dedicated the walkway around the Event Center as an area dedicated to any expressive activity. Nor has Plaintiff provided any, other than claiming it is. At best, he claims that the County's facility rule applies to the location he was standing in, but does not connect the facility rule to his physical location. Rather, from the face of Plaintiff's complaint, and the evidence he has provided, he has shown that it is not. The actions of Ron Janz and Maldonado indicate an understanding that the Event Center's property is something *other* than a traditional public forum.

Much like the sidewalks at issue in *Greer* and *Kokinda*, the Event Center's sidewalk is better understood as a nonpublic forum. When regarding restrictions in nonpublic fora, the restriction must simply be reasonable and not based on the

viewpoint of the speaker. *Kokinda*, 497 U.S. at 730; *McDonough v. Garcia*, 116 F.4th
1319, 1324 (11th Cir. 2024).

Officer Woelk's enforcement of a trespass warning (requested by the property
manager and private security) is not unlike the Eleventh Circuit's decision in *Watkins
v. Fort Lauderdale Police Officer*, 2025 WL 902117 (11th Cir. 2025). There Eric Watkins,
proceeding *pro se*, was sitting in his car in the parking lot of a United States Post Office
singing "an antigay song." *Id*. at *1. Officer Good was seated nearby in his own
vehicle, but exited his vehicle with a dog and began to walk through the parking lot.
*Id*. Watkins continued to sing and began to video record Officer Good. *Id*. According
to Watkins, Officer Good "became angry" and "shined his light at" Watkins and
ordered him to not video record him, which Watkins ignored. *Id*. Officer Good then
ordered Watkins to leave and trespassed him from the parking lot. *Id*.

Watkins sued under section 1983, and alleged that Officer Good retaliated
against him for exercising his First Amendment rights, violated his rights to due
process under the Fourteenth Amendment, and alleged the City violated his due
process rights under the Fourteenth Amendment because he could not contest the
trespass warning. *Id*. The District Court granted Officer Good's motion to dismiss and
determined that qualified immunity was appropriate, which was affirmed on appeal.
*Id*. at *4.

In its affirmation of the District Court's opinion, the Eleventh Circuit noted that
it was not clearly established that Officer Good could not order Watkins to leave the

Post Office parking lot. *Id*. at *3. This was because in terms of First Amendment analysis, the Supreme Court in *Kokinda* previously held that a sidewalk from the parking lot to the door of a post office was not a traditional public forum – therefore it was not clearly established that Watkins' parking lot was a traditional public forum. *Id*. As a result, under the reasonableness standard, Officer Good's command to Watkins to leave the post office parking lot was a reasonable one. *Id*.

Applied to the facts of the instant case, it was not clearly established at the time of the trespass warning that the location Plaintiff was standing on was a traditional public forum. Nor was it clearly established that Officer Woelk could not rely on the statements of Maldonado and Ron Janz to provide Plaintiff with a trespass warning. Because private parties that managed and controlled the Event Center requested the trespass of the Plaintiff, Officer Woelk's issuance of the trespass was certainly a "reasonable" restriction of Plaintiff's so-called speech.

But even if the Court finds that the area Plaintiff was standing in was something other than a nonpublic forum – say a designated public forum or a traditional public forum, the government may enforce regulations as to time, place, and manner of expression as long as the regulations are 1) necessary to serve a compelling state interest; 2) content neutral, 3) narrowly tailored to serve a significant government interest, and 4) open to ample alternative channels of communication. *See United States v. Gilbert*, 130 F.3d 1458, 1461 (11th Cir. 1997).

What this means then, is that even if Charlotte County intended the area around the Event Center entrance as a space intended for expressive conduct by the general

14

public, Plaintiff must still do so in a manner that does not *harass* others. Any constitutional right is limited to the use of spaces under their "ordinary conditions in which [they] are made available to the general public." *See Catron v. City of St. Petersburge*, 658 F.3d 1260, 1267 n.5. (11th Cir. 2011). And "[t]he guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so when-ever and however and wherever they please." *U.S. Postal Serv. v. Council of Greenburgh Civic Assocs.*, 453 U.S. 114, 133 (1981) (quotation marks omitted).

Officer Woelk, as a law enforcement officer, has a valid interest in ensuring the safety of the public as well as enforcing the law and property rights of others. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980); *Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 376, (1997) (holding that ensuring public safety and order is a significant governmental interest). Police often ask individuals to temporarily leave public spaces, *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015), and doing so does not create a constitutional violation. *Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020). *Watkins v. Central Broward Regional Park,* 799 Fed. Appx. 659, 666-67 (11th Cir. 2020) (receipt of complaints from other park patrons and employees regarding Watkins' conduct rather than content of song was lawful basis to remove and ban Watkins from the park).

Taken together, even if Janz and Maldonado violated the County's ordinance, and were wrong about any alleged right of the Plaintiff, vicarious liability is

15

inapplicable in § 1983 suits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A plaintiff

must plead that each government-official defendant, through the official's own

individual actions, has violated the Constitution." *Id.* The Eleventh Circuit does not

impute motive onto people who carry out instructions with no apparent knowledge of

the allegedly unconstitutional reason for giving them. *See e.g., Huggins v. School District

of Manatee County*, 151 F. 4th 1268, 1284 (11th Cir. 2025). And even if Woelk's

assessment of the situation was incorrect, this does not defeat his entitlement to

qualified immunity. "The protection of qualified immunity applies regardless of

whether the government official's error is a mistake of law, a mistake of fact, or a

mistake based on mixed questions of law and fact." *Harlow*, 457 U.S. at 818.

> d. *Plaintiff fails to show causation*

Moreover, Plaintiff has brought claim against Officer Woelk for both viewpoint

discrimination and First Amendment retaliation. (Doc. 75, Pgs. 18-22). In order to

sustain a claim for viewpoint discrimination, Plaintiff must show that the "specific

motivating ideology or the opinion or perspective of the speaker is the *rationale* for the

restriction." *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (emphasis

added). Read another way, "rationale" means Plaintiff must plead sufficient facts to

show that his viewpoint was the *cause* of Woelk's issuance of the trespass. Plaintiff

completely fails to plead facts to show causation.

Plaintiff also brings a claim against Officer Woelk for First Amendment

retaliation. To properly allege a claim for retaliation, Plaintiff must show that 1) he

engaged in protected speech, 2) the retaliatory conduct adversely affected that speech,

and 3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the speech. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Both Plaintiff's claim for viewpoint discrimination and retaliation require him to properly plead *causation*. However, Plaintiff fails to provide any evidence that his viewpoint and/or speech was the *reason* for the trespass as opposed to his harassment of patrons of the event center and the request of Maldonado and Janz. There must be factual connection that establishes a "but-for" cause. *See Huggins v. School District of Manatee County*, 151 F. 4th 1268, 1284 (11th Cir. 2025). Just because Plaintiff believes it does not make it so. There must be "well-pleaded" factual allegations, not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, to Plaintiff's viewpoint - he claims his viewpoint is "citizen journalism/ the government accountability." However, he does not plead a single fact to show that Woelk's issuance of the trespass warning was issued *because* of this specific viewpoint. Instead, Plaintiff provides conclusory conspiratorial allegations as assertion of fact in order impose liability. For example, he alleges the "thin blue line is a brotherhood. Whether you are a deputy or a cop you have your brother's back." (Doc. 75, Pg. 17). If anything, he accuses Defendant Janz of knowing his viewpoint, but does not show how this was communicated to Woelk or if Woelk even relied on this, apart from Janz explaining that Sheets was harassing customers. Further, once Officer Woelk provides Plaintiff with the trespass warning, he asks Officer Waldrop what Plaintiff was doing at the scene – reflecting a lack of knowledge of what Plaintiff's viewpoint and activities

were. (Doc. 75-4). Vicarious liability is inapplicable to § 1983 suits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* The Eleventh Circuit does not impute motive onto people who carry out instructions with no apparent knowledge of the allegedly unconstitutional reason for giving them. *See e.g., Huggins v. School District of Manatee County*, 151 F. 4th 1268, 1284 (11th Cir. 2025).

Second, his retaliation claim jumbles multiple actions together. For example, he states that he was both engaged in "lawful protest" and simultaneously engaged in "Free press activity." He was also "disseminat[ing] journalism" and "collecting content." According to the Plaintiff, Woelk retaliated against him for "disseminating journalism" and "collecting of content," but also for a "political protest." How Plaintiff could divine such intent by Woelk against all these simultaneous activities without factual support is remarkable. However, Plaintiff must still show that Woelk's decision to do so was because of his activities and not some other intervening force – say the real facts, which are that Maldonado and Janz, private parties in control of the property, requested the trespass.

As a result, Woelk had arguable probable cause, which was not based on Plaintiff's so-called First Amendment activities. First Amendment retaliation claims are generally defeated when there is probable cause to arrest. *See e.g., See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1296 (11th Cir. 2019). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has

reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (citation and quotation marks omitted). Probable cause "is not a high bar" and requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Paez*, 915 F.3d at 1286 (citation omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). [11]

An officer is entitled to qualified immunity where he had even "arguable probable cause"; that is, where a reasonable officer in the same circumstances and possessing the same knowledge as she possessed could have believed that probable cause existed. *Wilkerson*, 736 F.3d at 977–78. Arguable probable cause does not require proof of every element of a crime. *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018).

A person commits the Florida misdemeanor offense of trespass on property other than a structure or conveyance when, "without being authorized, licensed, or invited," he "willfully enters upon or remains in any property other than a structure or

---

[11] Neither Woelk nor the Plaintiff assert – that the Plaintiff was arrested, detained, or otherwise "seized" in any way. *See Rodriguez v. State*, 29 So. 3d 310, 311 (Fla. Dist. Ct. App. 2009) (concluding that "a stop merely to issue a trespass warning is not a *Terry* stop, but rather a consensual encounter"); s*ee also Watkins v. Miller*, 782 Fed. Appx. 770, 774 (11th Cir. 2019). In fact, the body camera footage provided by Plaintiff shows that he was not seized in any way.

conveyance: (1) As to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011." Fla. Stat. § 810.09(1)(a), (2)(a).

Here, the Plaintiff has pled that Defendants Ron Janz and Michelle Maldonado-Flores are not government employees. He admits the Event Center is privately managed and owned by the County. Officer Woelk's reliance on Maldonado and/or Janz's request is sufficient probable cause to issue the trespass warning. *See e.g., Myers v. Bowman*, 713 F.3d 1319, 1326–27 (11th Cir. 2013) (Police officers are "entitled to rely on a victim's criminal complaint as support for probable cause"); *See also, Watkins v. Broward Sheriff's Office*, 824 Fed. Appx. 865, 869 (11th Cir. 2020) (Finding arguable probable cause to arrest for trespass when officer relied on statement of property manager). Officer Woelk was also under no obligation to listen to Plaintiff's protestations. *See Marx v. Gumbinner*, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990) (a law enforcement officer is under no obligation to believe a suspect's story and forgo an arrest when the information she initially received provided probable cause to believe that the suspect had committed or was committing a crime). Police often ask individuals to temporarily leave public spaces, *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015), and doing so does not create a constitutional violation. *Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020).

   e. *Plaintiff Fails to State a Claim for Conspiracy*

Plaintiff's final claim against Officer Woelk is for a purported conspiracy. For the reasons discussed above, Woelk asserts that he is entitled to qualified immunity

and no constitutional deprivation occurred. As a result, a claim for conspiracy also fails.

Assuming *arguendo* Plaintiff properly pled a constitutional deprivation, he still has not pled a valid claim for conspiracy. A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir.1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990) (citations omitted).

As Maldonado's motion to dismiss points out, there are no substantive facts pled to show when Defendants allegedly reached an "understanding" to violate the Plaintiff's rights. Nor is there any facts that show some sort of agreement between the parties to do so. Additionally, the sequence of events pled in Plaintiff's complaint do not led credence to the formation of an "understanding." First, Plaintiff alleges that Janz called the police. Next, Officer Woelk arrives on scene. Then Plaintiff alleges that Woelk told Janz that Plaintiff was allowed to speak. Right here, the claim for conspiracy should end. Plaintiff's own complaint alleges that Woelk told Janz that he had a general right to speak - so there is no "understanding" or agreement to violate his rights.

The rest of Plaintiff's facts under the heading of "conspiracy" also do not show any conspiracy by Woelk. Simply alleging that Woelk had some generalized knowledge of Plaintiff's YouTube channel is not sufficient to show a conspiracy. All Plaintiff has provided is conclusory statements.  And alleging that Woelk violated Charlotte County's facility rule makes no sense. Plaintiff has provided no facts to show that Woelke knew of the rule or was responsible for enforcing the rule. Nor does he show how the "corporal" is the same "corporal" as Officer Woelk. It is rank conjecture.

## IV.    Plaintiff's Procedural Due Process Claim is Nonsensical

Additionally, Sheets brings a procedural due process claim under the Fourteenth Amendment against the City of Punta Gorda, claiming that the warning he received provided no procedural means for a challenge both pre and post warning. (Doc. 75, Pgs. 22-23).[12] This allegation makes no sense. To pursue a procedural due process claim, a plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). An individual may forfeit his liberty interest by committing trespass or other violations of the law. *Id.* (*citing City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994)). If there is a forfeit of liberty interest there is no deprivation. *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115 *1128 (M.D. Fla. Nov. 23, 2019).

---

[12] Notice and hearing ""may be postponed until after the deprivation has occurred." *Catron v. City of St. Petersburg*, 658 F. 3d 1260, 1266 (11th Cir. 2011)

Plaintiff admits that Charlotte County, not the City of Punta Gorda, owns and controls the Event Center. The City does not have the authority one way or another to allow Plaintiff access to the building. This must come from the County or its designated agents. The purpose of a trespass is to enforce the rights of the party that controls the property. Plaintiff was not issued a trespass from City property nor was he done so pursuant to an ordinance of the City. Further, Plaintiff has alleged that Woelk, not the City, failed to provide him a "pre-warning" hearing. (Doc. 75, Pg. 18). It makes no sense why Woelk would be responsible for this.

Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a rule 12(b)(6) dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003). Even if Plaintiff is somehow correct and he must appeal the trespass with the City over access to County land, he still does not adequately state that there was constitutionally inadequate process. He merely states that he could not challenge the warning. He states he went to a county court house and was told he had no court date. But this is not enough, any person could conceivably walk into a court house for any reason and be told they have no court date. *See e.g., In re Watkins*, 2024 WL 4119035 *3 (11th Cir. 2024) (upholding dismissal of Plaintiff's complaint which alleged procedural due process violations regarding trespass warnings for lack of sufficient factual allegations). His only facts are conclusory self-serving statements that are completely unverifiable. He provides no specifics or evidence.

23

## CONCLUSION

Plaintiff may believe that the First Amendment gives him an absolute right to go anywhere he pleases and do anything he likes in the name of "free speech." But that is not what the First Amendment permits. Plaintiff brings the same claims against Officer Woelk as he has against other officers in his other lawsuits. His latest attempt is an improper shotgun pleading and fails to state proper claims against Officer Woelk. Officer Woelk is entitled to qualified immunity, and requests the Court dismiss the Plaintiff's complaint with prejudice, as it has never been clearly established that an officer cannot issue a trespass warning based on the request of the manager of a property. Similarly, the City requests the Court dismiss the claims against it as it has no control over the County's property.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel and Plaintiff, Mr. Andrew B. Sheets, Pro Se., have conferred in good faith via email on November 12, 2025 regarding the relief requested herein. Mr. Sheets is opposed to the relief requested in this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the foregoing through a notice of electronic filing to: Andrew Bryant Sheets, *Pro se*, 11408 Pepperdine Street, Punta Gorda, FL 33955 at:

deprivationofrightsunderlaw@gmail.com; Tiernan Cole, Esquire, Assistant County

Attorney, Charlotte County Attorney's Office 18500 Murdock Circle, Suite 573, Port

Charlotte, FL 33948, Tiernan.Cole@CharlotteCountyFL.gov;

Terri.Forister@charlottecountyfl.gov; County.Attorney@CharlotteCountyFL.gov; J.

Andrew Talbert, Esquire, Diane M. Longoria, Esquire, Quintairos, Prieto, Wood &

Boyer, P.A., 114 East Gregory Street, 2nd Floor, Pensacola, FL 32502;

atalbert@qpwblaw.com; Diane.longoria@qpwblaw.com; (*Attorneys for Defendant*

*Michelle Maldonado-Flores);* Jacob J. Liro, Esquire, WICKER SMITH O'HARA

McCOY & FORD, P.A. 2800 Ponce de Leon Blvd., Suite 800 Coral Gables, FL

33134, JLiro@wickersmith.com, and Ethan A. Arthur, Esquire, 100 South Ashley

Drive, Suite 1800 Tampa, FL 33602, Earthur@wickersmith.com, *(Attorneys for Weiser*

*Security Services, Inc and Ron Janz);* and on this 19th day of November, 2025 I served

copies via e-mail upon the following non-CM/ECF participant: Andrew B. Sheets, *pro*

*se*, 11408 Pepperdine Street, Punta Gorda, FL 33955,

deprivationofrightsunderlaw@gmail.com.

/s/ David R. Jadon
David R. Jadon, Esquire
Florida Bar No.: 1010249
Roper, Townsend & Sutphen, P.A.
255 S. Orange Avenue, Suite 750
Orlando, FL 32801
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary: djadon@roperpa.com
Secondary: lramirez@roperpa.com
Attorney for Defendants Matthew
Woelk and City of Punta Gorda