UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.

MATTHEW WOELK, IN PERSONAL CAPACITY; CITY OF PUNTA GORDA; RON JANZ, IN PERSONAL CAPACITY; MICHELLE MALDONADO-FLORES, IN PERSONAL CAPACITY; AND CODY WALDROP, IN PERSONAL CAPACITY,

    Defendants.

Case No. 2:25-cv-61-KCD-DNF

/

## **ORDER**

Before the Court is Defendant Ron Janz's Motion to Dismiss (Doc. 80), and Plaintiff Andrew Sheets' Response in Opposition (Doc. 93).[1] The question presented here is a familiar one in civil rights litigation: can a private security guard be held liable as a state actor under 42 U.S.C. § 1983 by calling the police to report a protester?

Sheets says yes. He argues that Janz was part of a coordinated effort with the Punta Gorda police to suppress his First Amendment activities. Janz,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

for his part, says he was just doing his job—working for a private security firm and reporting what he perceived to be a disturbance. After reviewing the pleadings and relevant federal law, the Court concludes that Janz has the better of the argument. Sheets has not pled sufficient facts to allege a plausible § 1983 claim.

## I. Background

We start with the facts as Sheets tells them. His account must be accepted at this stage. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

The setting is the Charlotte Harbor Event & Conference Center in February 2024. (Doc. 75 at 3.) The Event Center was hosting a gun show, and Sheets—who describes himself as a "neurodivergent journalist"—was there to protest on the sidewalk. (*Id.*)

But the story really begins the day before. Sheets alleges that two Punta Gorda police officers, Defendants Waldrop and Woelk, met with Janz, a private security guard for Weiser Security. According to the complaint, the officers gave Janz a specific instruction: if Sheets showed up at the Event Center the next day, Janz was to call 911. (*Id.* at 8.)

Janz followed those instructions. When Sheets arrived on the sidewalk to record and protest, Janz called the police. When the officers arrived, they

didn't just stand by; they issued a trespass warning and forced Sheets to leave the area. (*Id.* at 14.)

The complaint contains a single claim for conspiracy against Janz under 42 U.S.C. § 1983. Sheets points to body camera footage as the smoking gun of a conspiracy. In that footage, Officer Woelk reportedly acknowledges that Sheets was on a public sidewalk and was "allowed to… do this" under the First Amendment. (*Id.* at 15.) Even so, the officers proceeded with the trespass warning.

In Sheets' view, this sequence of events—the pre-event meeting, the 911 call, and the subsequent police action—transforms Janz from a private security guard into a "willful participant in joint action with the State." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). He argues that Janz wasn't just a bystander reporting a crime. He was, instead, a cog in a government machine designed to silence a dissenter.

## II. Standard of Review

"To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face." *Andre v. Clayton Cnty., Ga.*, 148 F.4th 1282, 1291 (11th Cir. 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll well-pleaded facts

3

are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). The reviewing court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021).

### III. Discussion

As mentioned, the question for the Court is whether Janz can be held liable under federal law. To answer that, we turn to the requirements of the operative statute—42 U.S.C. § 1983.

To proceed under § 1983, a plaintiff must clear two hurdles. First, he must show that the antagonist was "act[ing] under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). This is the so-called state action requirement, and it exists for a reason: to distinguish between individual misconduct, which is the province of state tort law, and government overreach, which is the province of the Constitution. If you don't have a state actor, you don't have a § 1983 claim—no matter how much the defendant might have upset you. *See Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."). Section 1983 is not a general font of tort law. Rather, it is a tool to hold the *government* accountable for

constitutional violations. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Second, the plaintiff must prove that this state actor deprived them of a right "secured by the Constitution and laws" of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Section 1983 is not itself a source of substantive rights; it is a "method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

Turning back to the facts here, Janz is not a state actor in the traditional sense. *See West*, 487 U.S. at 50 ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). According to the complaint, he is a private security guard. (Doc. 75 at 3.) Courts have found that security guards act under color of state law when they represent themselves as police officers in some way, *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003), operate with plenary police powers, *Owens v. City of Fort Lauderdale*, 174 F. Supp. 2d 1282, 1290 (S.D. Fla. 2001), or acquire private employment through official police channels, *Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir. 1980). No such facts are alleged here. By all accounts, Janz is a private actor tasked with providing general security at the Event Center. There are no allegations to conclude that he instead operated under state authority. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1457 (10th Cir. 1995) (providing

5

security services, including conducting pat-down searches, is not a public function even at a building leased from government).

Generally speaking, private parties are not state actors. There are, of course, exceptions. "The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). If Janz doesn't fit into one of these buckets, he stays a private actor, and Sheets' § 1983 claim stays out of court.

Starting with the public function test, we ask: was Janz performing a job that has "been traditionally the exclusive prerogative of the State"? *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). This is a very short list—think holding elections or fire protection. *See, e.g.*, *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014). The facts here do not show (and Sheets does not argue) that Janz was performing a public function on the date in question. Because private parties commonly perform security services, even on government property, Janz's alleged work cannot transform him into a state official. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 341 (6th Cir. 2006); *see also Hughes v. AT&T*, No. 319CV00179SLGDMS, 2019 WL 7285576, at *3 (D. Alaska Dec. 5, 2019) ("[G]enerally, a private security guard who works independently from local police would not be a state actor.").

6

Next, we look for compulsion. This test asks whether the government exercised such "coercive power" or provided such "significant encouragement" that the private party's choice "must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). When the state has, in effect, commanded a particular result, the actions of a private party consistent with that command may support the conclusion that he is a state actor. For example, a private doctor was held to be a state actor when he was conscripted by the police to search a suspect under a warrant. *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st Cir. 1991).

There are no such analogous facts here. Janz did not detain Sheets or issue the trespass warning. As best the Court can discern from the complaint, it was the officers (not Janz) who undertook the unconstitutional conduct. "The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged *the action alleged to violate the Constitution.*" *Lane v. Piedmont Healthcare, Inc.*, No. 1:21-CV-2430-TWT, 2021 WL 5074494, at *2 (N.D. Ga. Oct. 13, 2021) (emphasis added); *see also Weaver v. James Bonding Co.*, 442 F. Supp. 2d 1219, 1224 (S.D. Ala. 2006) (rejecting state compulsion theory out of hand where the plaintiff made no allegations of any state compulsion on defendant). And while Sheets points out that the officers told Janz to call them, a request—or even an instruction—to report a specific person's arrival is not the same as state-mandated coercion. To hold

7

otherwise would mean that any time a citizen follows a police officer's request to report suspicious activity, they risk being hauled into federal court as a state actor. That is not what the Constitution requires, and it is not what the compulsion test allows. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970) (noting that a state is responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement).

Finally, we have the nexus/joint action test. This is where Sheets pins his hopes. (Doc. 93 at 4.) To pass the joint action test, a plaintiff must show "the state has intertwined itself with the private actor to such an extent that the state was a joint participant in the enterprise." *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1311-12 (M.D. Fla. 2005). Put another way, "the governmental body and private party must be intertwined in a symbiotic relationship." *Focus on the Fam.*, 344 F.3d at 1278. And "[t]he Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Id.*

It is well-settled that a private party who calls the police for assistance or provides them with information, as Janz did here, does not become a willful participant in state action under § 1983. *See, e.g.*, *Holmes v. Dillard's Dep't Store*, No. CV424-012, 2024 WL 1298029, at *1 (S.D. Ga. Feb. 20, 2024) ("The fact that private parties call police clearly does not transform them into state actors."). As the Eleventh Circuit has put it, "[m]erely making a report of

8

perceived misconduct and furnishing information to the police" is not joint action under color of state law. *Kelly v. Broward Sheriff's Off. Dep't of Det.'s*, 560 F. App'x 818, 821 (11th Cir. 2014); *see also Behlin v. Rite Aid Pharmacy Store*, No. 18 CIV. 4335 (KPF), 2022 WL 220017, at *11 (S.D.N.Y. Jan. 25, 2022). So to establish the requisite nexus between Janz and the police who violated his rights, Sheets alleges a conspiracy. (Doc. 93 at 5 ("The conspiracy by Defendants . . . resulted in an actual deprivation of First amendment rights[.]")).

To be sure, a conspiracy between the state and a private party can satisfy the joint action test. *See Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021). This makes sense because the gist of a conspiracy is joint activity. So if a private citizen and a police officer put their heads together and agree to violate the Constitution, that private citizen has stepped into the shoes of the state. *See, e.g.*, *Smith v. Lifeline Animal Project, Inc.*, No. 1:22-CV-2325-SEG, 2024 WL 1243022, at *5 (N.D. Ga. Feb. 16, 2024).

According to Sheets, the "standard for conspiracy is extremely low." (Doc. 93 at 17.) Not so. "[T]o establish a § 1983 conspiracy, a plaintiff must show that the defendants reached an understanding to violate [his] rights." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016). This requires "some evidence of agreement between the defendants and willful

9

participation." *Id.* There must be "*particularized allegations* that a conspiracy exists." *Id.* (emphasis added).

To support the alleged conspiracy, Sheets offers the 911 call where Janz says that he was instructed to call the police if Sheets showed up. According to Sheets, this pre-arranged plan proves that they were all in it together. But federal courts have long drawn a sharp line between cooperation and conspiracy. *See Occhino v. Lannon*, 150 F.R.D. 613, 623 (D. Minn. 1993) ("[T]he mere furnishing of information to police officers does not constitute joint action under color of State law[.]"). It is not enough to show that a private citizen and the police communicated. The court must be able to infer a shared, unlawful goal to violate the Constitution. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002).

The thing is, the plan alleged here—"if he shows up, call us"—isn't a conspiracy to violate the First Amendment. And even if we assume the officers had a secret, illicit motive to silence Sheets, the complaint does not show that Janz shared that motive or even knew about it. "The allegations tend to suggest that [the police officers] used [Janz] as an unsuspecting pawn to investigate [Sheets], but they do not establish an [elicit] agreement." *Pittman*, 662 F. App'x at 881.

Sheets treats the 911 call as a smoking gun. (Doc. 93 at 7-9.) But there is nothing in it to suggest that Janz was aware of any allegedly

10

unconstitutional plan by the police to suppress speech. The lynchpin of a conspiracy is an agreement to inflict a wrong, not just an agreement to communicate. *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990). The call shows that information was shared; it does not show that a constitutional violation was in the works. To find a meeting of the minds here, we would have to engage in the kind of speculation that is expressly prohibited at this stage. *See Pepe v. Lajqi*, No. 3:25CV565/MCR/ZCB, 2025 WL 2815671, at *3 (N.D. Fla. Aug. 1, 2025).

Boiled down, Sheets wants the Court to infer that Janz had an unlawful goal because he was told to call the police if Sheets appeared. That is a bridge too far. To hold that a 911 call—even one prompted by a prior police request—is enough to create state action would chill the very cooperation between citizens and law enforcement that keeps communities safe. The "state action" boundary is essential to "preserve[] an area of individual freedom by limiting the reach of federal law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Expanding that reach to include citizens who contact police when asked would stretch § 1983 past its breaking point. Without facts showing that Janz was in on the "why" (the alleged suppression of speech) and not just the "what" (the 911 call), the conspiracy allegation simply doesn't hold water.

Finally, Sheets suggests that we can infer a conspiracy because "Janz took no action even after knowing the trespass was retaliatory." (Doc. 93 at

17.) The Court remains unconvinced. As mentioned, a conspiracy requires a meeting of the minds on a shared, unconstitutional objective. *See Pittman*, 662 F. App'x at 880. Simply watching an unlawful act unfold is not the same thing as agreeing to it. Janz's inaction—even in combination with all the other evidence—is not enough to bridge the gap between private actor calling 911 and state-sponsored conspirator.

To turn Janz into a state actor, Sheets needed to allege facts showing that the police had essentially surrendered their independent judgment to Janz, or that they had a pre-arranged plan to specifically punish Sheets for his speech. *See Lugar*, 457 U.S. at 941. Neither scenario is plausible here. The officers made their own choice to issue the trespass warning. Janz provided the information, but the state provided the "action." That gap is what prevents the Court from finding a sufficient nexus.

## III. Conclusion

The state action requirement under § 1983 is not a mere technicality; it is a fundamental line-drawing exercise that preserves the distinction between the public and private spheres. If the Court were to accept Sheets' theory—that a private security guard becomes a state actor by simply following a police directive to report a specific person's arrival—that line would vanish. Janz may have triggered the police response, but he did not exercise state power. Because Sheets has failed to allege facts showing a shared, unlawful meeting of the

minds between Janz and the officers to violate the First Amendment, the nexus is missing, and his § 1983 claim fails.

Sheets has filed three versions of his complaint. He has laid out the facts of his interaction with Janz in exhaustive detail. The problem is not a lack of effort or a missing detail; the problem is that the facts he has simply do not add up to state action as a matter of law. When a plaintiff has had multiple opportunities to plead his best case and still falls short on a core legal requirement, as here, further pleading is unnecessary. *See, e.g., Burke v. Custom Marine Grp.*, 847 F. App'x 578, 582 (11th Cir. 2021).

At some point, the litigation must reach a finish line. For the claims against Janz, we have reached it. Accordingly, Defendant Ron Janz's Motion to Dismiss (Doc. 80) is **GRANTED**. The claims against him are dismissed **WITH PREJUDICE**. The Clerk is directed to terminate Ron Janz from the docket.

**ORDERED** in Fort Myers, Florida on January 8, 2026.

Kyle C. Dudek
United States District Judge