UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

  v.

Case No. 2:25-cv-61-KCD-DNF

MATTHEW WOELK, IN PERSONAL CAPACITY; CITY OF PUNTA GORDA, CAPACITY; RON JANZ, IN PERSONAL CAPACITY; MICHELLE MALDONADO-FLORES, IN PERSONAL CAPACITY; AND CODY WALDROP, IN PERSONAL CAPACITY;

    Defendants.
_____/

## ORDER

Plaintiff Andrew Bryant Sheets, a self-described journalist, was protesting outside the Charlotte Harbor Event and Conference Center. The protest ended when local police issued him a trespass warning. Sheets then sued several people under 42 U.S.C. § 1983. Pertinent here, Sheets alleges that Michelle Maldonado-Flores, an employee of the private company that manages the Event Center, conspired with the police to violate his First Amendment rights. But as the Court recently explained in its order regarding Defendant Ron Janz, the bar for transforming a private citizen into a state actor under § 1983 is high—and Sheets has once again failed to clear it.

## I. Background

The essential facts are the same as those detailed in the Court's prior order. On January 24, 2021, Sheets was protesting on a public sidewalk in front of the Event Center. His protest focused on an "unconstitutional database of gun owners" he believes was maintained by the Charlotte County Sheriff. (Doc. 75 at 4.)[1]

The police arrived after a private security guard called 911. While on the scene, Officer Woelk spoke with Maldonado. He asked her if anyone had come "in and complain[ed] about him to you?" (*Id.* at 15.) Maldonado replied: "no no no I was just setting up outside and I heard someone shouting, and I looked and he was there." (*Id.*) She later provided her identification to the officer. Despite the lack of complaints, Officer Woelk issued Sheets a trespass warning.

The complaint contains a single claim for conspiracy against Maldonado under 42 U.S.C. § 1983. Sheets argues that because Maldonado was aware of the Event Center's rules protecting expressive activity and was "working with" Officer Woelk during the encounter, she became a willful participant in a state-led conspiracy to silence him. (Doc. 75 at 25.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## II. Standard of Review

"To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face." *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). The reviewing court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021).

## III. Discussion

Section 1983 is a powerful tool for redressing constitutional wrongs, but it has a built-in limit: it only applies to people acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It does not reach "merely private conduct, no matter how discriminatory or wrongful." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003). Because Maldonado is allegedly a private employee (Doc. 75 at 3), Sheets

3

must show she was essentially acting as an arm of the government to trigger § 1983 liability.

"The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

First, managing a conference center is not a public function traditionally the "exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). This is a very short list—think holding elections or fire protection. *See, e.g.*, *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014). Second, there are no facts suggesting the state coerced or significantly encouraged Maldonado to violate Sheets' rights. According to the complaint, Officer Woelk "trespassed [Sheets]." (Doc. 75 at 24.) If anything, the facts suggest that the officers arrived with their own plan already in place.

That leaves the nexus/joint action test. For this to apply, a plaintiff must show "the state has intertwined itself with the private actor to such an extent that the state was a joint participant in the enterprise." *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1311-12 (M.D. Fla. 2005). Put another way, "the governmental body and private party must be intertwined in a symbiotic relationship." *Focus on the Fam.*, 344 F.3d at 1278. And "[t]he

4

Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Id.*

The only facts (as opposed to conclusory allegations) to establish a "symbiotic relationship" between Moldonado and the police is the body-cam footage. But here is the problem: answering a police officer's question during an investigation does not turn a private citizen into a state actor. In the video, Officer Woelk asks Maldonado if anyone complained, and she says no. That is it, there is nothing else. It is well-settled that a private party who calls the police for assistance or provides them with information does not become a willful participant in state action under § 1983. *See, e.g., Holmes v. Dillard's Dep't Store*, No. CV424-012, 2024 WL 1298029, at *1 (S.D. Ga. Feb. 20, 2024). As the Eleventh Circuit has put it, "[m]erely making a report of perceived misconduct and furnishing information to the police" is not joint action under color of state law. *Kelly v. Broward Sheriff's Off. Dep't of Det.'s*, 560 F. App'x 818, 821 (11th Cir. 2014).

To establish the requisite nexus, Sheets also alleges a conspiracy. (Doc. 94 at 8 ("Maldonado did have an understansding and was a willful participate in the conspiracy to violate Plaintiff's rights.")) To be sure, a conspiracy between the state and a private party can satisfy the joint action test. *See Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021). This makes sense because the gist of a conspiracy is joint activity. So if a private citizen

5

and a police officer put their heads together and agree to violate the Constitution, that private citizen has stepped into the shoes of the state. *See, e.g.*, *Smith v. Lifeline Animal Project, Inc.*, No. 1:22-CV-2325-SEG, 2024 WL 1243022, at *5 (N.D. Ga. Feb. 16, 2024).

According to Sheets, the "standard for conspiracy is extremely low." (Doc. 94 at 15.) Not so. "[T]o establish a § 1983 conspiracy, a plaintiff must show that the defendants reached an understanding to violate [his] rights." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016). This requires "some evidence of agreement between the defendants and willful participation." *Id.* There must be "*particularized allegations* that a conspiracy exists." *Id.* (emphasis added).

Again, the only facts (as opposed to conclusory allegations) Sheets has to offer is the body-cam footage. But federal courts have long drawn a sharp line between cooperation and conspiracy. *See Occhino v. Lannon*, 150 F.R.D. 613, 623 (D. Minn. 1993) ("[T]he mere furnishing of information to police officers does not constitute joint action under color of State law[.]"). It is not enough to show that a private citizen and the police communicated. The court must be able to infer a shared, unlawful goal to violate the Constitution. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). There are no facts to show (or even suggest) such an agreement between Maldonado and the police. To find otherwise we would have to engage in the kind of

speculation that is expressly prohibited at this stage. *See Pepe v. Lajqi*, No. 3:25CV565/MCR/ZCB, 2025 WL 2815671, at \*3 (N.D. Fla. Aug. 1, 2025).

Finally, the Court must address Sheets' persistent reliance on Charlotte County Facility Rule 7. (Doc. 75 at 25.) Rule 7, he explains, permits individuals to demonstrate and protest in an orderly manner outside County-owned buildings like the Event Center. Maldonado was aware of this rule, so Sheets concludes that her failure to stop the trespass violated contractual mandates to uphold constitutional protections and shows she was part of the conspiracy. (*Id.*) This line of reasoning makes little sense. As mentioned, a conspiracy requires a meeting of the minds on a shared, unconstitutional objective. *See Pittman*, 662 F. App'x at 880. Simply watching an unlawful act unfold is not the same thing as agreeing to it. The "state action" boundary is essential to "preserve[] an area of individual freedom by limiting the reach of federal law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Expanding that reach to include citizens in a state-sponsored conspiracy simply because they witnessed police misconduct would stretch § 1983 past its breaking point.

Sheets provides plenty of conclusory allegations about a conspiracy, but he offers zero facts showing an actual agreement between Maldonado and the officers to violate the Constitution. That ends the matter and dictates the result—she cannot be held liable as a state actor under § 1983.

7

One last ancillary issue. Pro se litigants are not expected to be experts in the Federal Rules, but they are expected to listen. The Court previously held a detailed hearing where it discussed with Sheets the specific pleading requirements for a conspiracy claim. (*See* Doc. 73.) He was told that labels and conclusions are not enough, and he needed to allege actual facts suggesting an agreement to do wrong.

Despite the guidance, Sheets returned with an amended pleading that still relies on the barest, conclusory allegations with zero factual support against Maldonado. Naming a private citizen in a federal civil rights suit is a serious matter. When a plaintiff continues to press a claim after being told exactly why it is legally deficient—and still fails to provide a single supporting fact—the claim moves from earnest to frivolous. So Sheets must **SHOW CAUSE** why he should not be **sanctioned** and required to pay Moldonado's attorney fees for filing a frivolous claim and needlessly expending the resources of the parties and this Court. *See* Fed. R. Civ. P. 11(c)(3); *Godwin v. Marsh*, 266 F. Supp. 2d 1355, 1360 (M.D. Ala. 2002).

### III. Conclusion

For the reasons stated, the Court finds that the complaint fails to state a § 1983 claim against Maldonado. Sheets has had multiple bites at the apple, and despite a detailed hearing where the Court explained the necessity of pleading specific facts to support a conspiracy, he has returned with the

8

same bare conclusions. At some point, the pleading process must reach its end. Because the defect here—the lack of state action—is a fundamental legal hurdle that no amount of creative labeling can clear, further amendment would be futile. Maldonado is a private citizen who happened to be at work when the police arrived. She is not a state actor, she did not join a conspiracy, and she does not belong in this lawsuit.

Accordingly, Moldonado's Motion to Dismiss Second Amended Complaint (Doc. 82) is **GRANTED**. The claims against her are dismissed **WITH PREJUDICE**. The Clerk is directed to terminate Moldonado from the docket. Finally, on or before January 23, 2026, Sheets must respond to this order and show cause why he should not be sanctioned.

**ORDERED** in Fort Myers, Florida on January 8, 2026.

Kyle C. Dudek
United States District Judge