UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

   v.                                Case No. 2:25-cv-61-KCD-DNF

MATTHEW WOELK, IN
PERSONAL CAPACITY; CITY OF
PUNTA GORDA; AND CODY
WALDROP, IN PERSONAL
CAPACITY,

      Defendants.

_____/

## **ORDER**

Plaintiff Andrew Bryant Sheets had something to say. A self-described journalist and critic of local law enforcement, Sheets took to the sidewalk outside the Charlotte Harbor Event and Conference Center ("Event Center") to protest what he viewed as an unconstitutional registry of gun owners. He brought a sign. He brought a shirt with a profane message about "policing for profit." And, fairly quickly, he brought about the arrival of the police. (*See* Doc. 75.)

After a security guard called 911, Defendant Matthew Woelk, a Punta Gorda police officer, arrived on the scene and issued Sheets a trespass warning. (*Id.* at 19.) That piece of paper did two things: it forced Sheets to leave the property, and it barred him from returning for a year. (*Id.* at 21.) Sheets has

now sued Officer Woelk and the City of Punta Gorda (collectively "Defendants") under 42 U.S.C. § 1983, claiming they violated his First and Fourteenth Amendment rights.

Defendants move to dismiss the complaint. (Doc. 84.) To survive that motion, Sheets need not prove his case today. He simply needs to tell a story that, if true, adds up to a violation of the law. For the most part, he has done so. While his claim for viewpoint discrimination falls short, his claims regarding retaliation, conspiracy, and due process can proceed.

## I. Background[1]

The story begins in January 2021. Sheets was standing on a sidewalk outside the Event Center, which was hosting a gun show. His protest was, by design, provocative. He wore a shirt emblazoned with "Fuck Policing 4 Profit" and carried a sign asking attendees if they were on the "Sheriff's illegal list." (Doc. 75 at 6.)

Ron Janz, a private security guard at the venue, called 911. During that call, Janz told the operator something curious: "I was told by the police department to call. He just showed up here." (*Id.* at 8.) When the operator asked what Sheets was doing, Janz claimed he was "harassing the people coming in." (*Id.* at 9.)

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

Officer Woelk arrived and did a bit of investigating. He asked an Event Center employee, Michelle Maldonado-Flores, if anyone had complained. (*Id.* at 16.) Her answer was a triple negative: "No no no." (*Id.*) She had been setting up outside, heard shouting, and looked over to see Sheets. She did not report that he was blocking the path or threatening anyone. (*Id.*) Allegedly relying on the security guard's assertion that Sheets was "harassing," Officer Woelk issued the trespass warning noted above. This lawsuit followed.

## II. Standard of Review

"To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face." *Andre v. Clayton Cnty., Ga.*, 148 F.4th 1282, 1291 (11th Cir. 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). The reviewing court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021).

## III. Discussion

Before getting to the constitutional questions, we must clear away a procedural brush pile. Defendants first argue that Sheets's complaint is a "shotgun pleading." (Doc. 84 at 4-6.) The shotgun pleading doctrine is designed to prevent complaints that are so vague, disjoined, or repetitive that a defendant cannot figure out what they are being sued for. *See, e.g.*, *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019).

Defendants claim that Sheets committed a technical foul by incorporating prior factual allegations into each subsequent count, creating a domino effect of repetition. In a case involving a complex web of defendants and claims, such repetition might indeed make a responsive pleading impossible. But the claims here are lucid enough. While Sheets is not a lawyer, and his drafting might not win prizes for technical precision, he has not mashed Defendants together into an indistinguishable lump. To the contrary, he separates them out with care: Count I and Count II target Officer Woelk; Count III targets the City; and Count IV targets the group for conspiracy. And the factual basis for each is just as clear. It takes no great detective work to match the specific allegations—from the 911 call to the body camera footage—to the claims they support. Because the complaint plainly tells each defendant exactly what they are being sued for, the Court will not dismiss the case on a technicality. *See, e.g.*, *Green v. Miami-Dade Cnty.*, No. 08-20016-CIV, 2008 WL 11333589, at *1 (S.D. Fla. Oct. 16, 2008); *Aria Dental Grp., LLC v. Farmers*

4

*Ins. Exch.*, 528 F. Supp. 3d 1359, 1363 (M.D. Ga. 2021). We turn instead to the merits, with each claim discussed separately below.

**Count I—Viewpoint Discrimination**

Sheets first claims that Officer Woelk issued the trespass citation because he disliked the message on his shirt and sign. (Doc. 75 at 19-20.) Viewpoint discrimination is a particularly "egregious" form of speech suppression. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1279 (11th Cir. 2004). It happens when the government targets a speaker because of the specific opinion they express. *See Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) ("A restriction on speech constitutes viewpoint discrimination when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

The problem for Sheets is that he has not connected the dots between his message and Officer Woelk's motivation. To succeed here, Sheets needs to show that Officer Woelk acted *because of* his opinions, not just the fact he was speaking. *See, e.g.*, *Alimenti v. Town of Howey-in-the-hills, Fla.*, No. 5:20-CV-386-CEH-PRL, 2023 WL 2598662, at *11 (M.D. Fla. Mar. 22, 2023), *Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2023 WL 2394557, at *8 (N.D. Ga. Mar. 7, 2023). Sheets offers a theory: that because the "thin blue line is a brotherhood," Officer Woelk must have wanted to protect his fellow officers from criticism. (Doc. 75 at 17.) But that is a conclusion, not a fact.

5

There is no allegation that Officer Woelk let other protesters stay, or that he said anything disparaging about Sheets's political views. Without facts showing that Officer Woelk was driven by the opinions expressed rather than merely the presence of the speaker or his speech, this claim cannot stand. *See Sheets v. Martin*, No. 2:25-CV-444-SPC-NPM, 2026 WL 74078, at *3 (M.D. Fla. Jan. 9, 2026) ("[The] conclusory allegation that [Defendant] targeted Plaintiff for his viewpoint is insufficient."). At best, Sheets's viewpoint-discrimination theory is speculative. But "[m]ere speculation is insufficient to prevail on a First Amendment claim." *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, No. 03 C 8717, 2007 WL 9810896, at *3 (N.D. Ill. July 19, 2007); *see also Sheets v. Charlotte Cnty.*, No. 2:24-CV-958-JES-KCD, 2025 WL 1644084, at *5 (M.D. Fla. June 10, 2025). Count I is therefore dismissed.

**Count II—Retaliation**

Count II is a different matter. Here, Sheets claims that Officer Woelk retaliated against him for exercising his First Amendment rights. To proceed on this claim, Sheets must show: (1) speech or activity protected by the First Amendment, (2) adverse action, and (3) a causal connection between the protected speech or activity and the adverse action. *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023). "We recognize First Amendment retaliation claims because [t]he Amendment protects not only the affirmative right to

6

speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Id.* at 579-80.

Evaluating whether Sheets engaged in protected speech requires the Court to analyze where that speech occurred. In First Amendment law, location is everything. The government's power to limit speech shifts dramatically depending on the setting. On a public street or in a park, the government's hands are largely tied. These are "traditional public fora," places where citizens have gathered for centuries to debate the news of the day. *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). "[T]he guiding First Amendment principle that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content applies with full force in a traditional public forum." *Id.* at 477.

But move that same speaker to a military base or a government office, and the rules change. In those locations, the government can impose reasonable restrictions to keep the peace and get its work done. *See Wright v. Marshall Cnty. Ala.*, 752 F. Supp. 3d 1244, 1263 (N.D. Ala. 2024). In non-public fora, the government's interest "to preserve the property under its control for the use to which it is lawfully dedicated" is at its zenith. *Greer v. Spock*, 424 U.S. 828, 836 (1976). Consequently, "any time, place, and manner restrictions made on expressive activity need only be viewpoint neutral and reasonable;

and the restriction need not be the most reasonable or the only reasonable limitation." *Bloedorn v. Grube*, 631 F.3d 1218, 1235 (11th Cir. 2011).

Officer Woelk argues that this case belongs in the second category. (Doc. 84 at 12.) He claims the sidewalk outside the Event Center is not a place for protest, but merely a transit strip—a glorified path from the parking lot to the front door, much like the post office walkway the Supreme Court deemed non-public in *United States v. Kokinda*. (*Id.* at 11.) He says the sidewalk at issue was built for passage, not persuasion. *See, e.g.*, *Keister v. Bell*, 240 F. Supp. 3d 1232, 1237 (N.D. Ala. 2017).

The problem for Officer Woelk is that we are at the motion-to-dismiss stage, and Sheets tells a different story. He alleges he was standing on an ordinary sidewalk, the very archetype of a traditional public forum. To be sure, courts do "not merely identify the area of land covered by the regulation as a sidewalk  . . . and therefore conclude that it was a public forum," but instead must analyze the "location and purpose" of that forum before categorizing it. *United States v. Kokinda*, 497 U.S. 720, 728 (1990). But the specific details regarding the sidewalk's location and function here are outside the complaint. To rely on those details now would be impermissible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A]ll the allegations in the complaint are true (even if doubtful in fact)."). If Sheets is right—and we must assume he is—then he stood on ground where the government's ability to silence him was

8

at its weakest. We cannot instead assume, as Officer Woelk asks, that this particular stretch of concrete was immune from the First Amendment.

Against this backdrop, Sheets has shown that he was engaged in protected speech. To be sure, his chosen method of expression was crude. He wore a shirt reading "Fuck Policing 4 Profit" and allegedly made comments to passing attendees referencing the Holocaust. But unless speech falls into a few historic and narrow categories—like true threats, incitement, or fighting words—it remains protected in a public forum. *See Virginia v. Black*, 538 U.S. 343, 359 (2003); *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471 (2025). Sheets claims he was neither violent nor threatening; he was simply loud and offensive. As the Supreme Court has reminded us, the "proudest boast of our free speech jurisprudence is that we protect the freedom to express the thought that we hate." *Matal v. Tam*, 582 U.S. 218, 246 (2017). If the government could silence any critic who merely used offensive language in the public square, like the facts alleged here, the First Amendment would mean very little indeed. *See Thurairajah v. City of Fort Smith, Ark.*, 925 F.3d 979, 985 (8th Cir. 2019) (holding "profane shout was protected activity"), *United States v. Hicks*, 980 F.2d 963, 970 (5th Cir. 1992) ("[A]s a general rule, simple profanity or vulgarity . . . is constitutionally protected speech.").

A note of caution: the story may change. It is entirely possible that when the evidence comes in—when we see the full video or hear from witnesses—it

will show that Sheets was doing more than just holding a sign and spewing profanity. If he was blocking the sidewalk, screaming fighting words, or issuing true threats, his First Amendment shield could fold. But we are not yet in the world of evidence; we are in the world of allegations. And in that world, we must take Sheets at his word. He claims he was peaceful, compliant, and merely provocative, not disruptive. Based on that version of events—the only one we are allowed to consider right now—he remained within the bounds of the Constitution. *See Iancu v. Brunetti*, 588 U.S. 388, 420 (2019) (Sotomayor, J., concurring in part) ("[P]rofanity is still properly understood as protected First Amendment content."), *S. Bos. Allied War Veterans Council v. City of Bos.*, 875 F. Supp. 891, 896 (D. Mass. 1995) ("The First Amendment has been held to protect the rights of protesters to burn the American flag and of Nazis to march through a community of Jewish Holocaust survivors.").

With the speech protected, the rest of the retaliation claim falls into place. Sheets must show that Officer Woelk's conduct adversely affected his speech. This is not a difficult hurdle. "[A] defendant adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016).

A trespass warning is not a friendly suggestion. It is a command backed by the threat of arrest. When an officer orders a protester to leave and stay

10

away for a year, that would deter a person of ordinary firmness from continuing to speak. Indeed, it did exactly that here: Sheets had to stop his protest and leave. *Neal v. Dekalb Cnty., Georgia*, No. 1:16-CV-184-WSD, 2016 WL 3476873, at *5 (N.D. Ga. June 27, 2016) ("An arrest or citation would deter a person of ordinary firmness from exercising his First Amendment rights."); *see also Locker v. City of St. Florian*, No. CV-08-S-907-NW, 2009 WL 10703405, at *6 (N.D. Ala. Oct. 27, 2009).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Sheets alleges that Officer Woelk forced him to terminate his protest. Being compelled by the state to pack up one's political dissent and exit the public square is a deprivation of liberty, not a mere inconvenience. That effective silencing, however brief, is an injury the Constitution recognizes. *See KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1261 (11th Cir. 2006) (explaining that "nominal damages are . . . appropriate in the context of a First Amendment violation," even where the plaintiff "suffers no compensable injury").

Finally, in order "to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). This is not a case where we must guess at the

11

officer's mindset. Officer Woelk did not cite Sheets for jaywalking or loitering; he allegedly cited him *because* of his speech. (*See* Doc. 75 at 16 ("Incident report shows that Mr. Sheets was trespassed for offensive literature on his shirt and his sign[.]").) When the impetus for the citation is the speech itself, the causal link between the protected activity and the adverse action is undeniable. Officer Woelk allegedly saw the speech, decided it was improper, and issued a trespass ticket to stop it. That is the definition of being subjectively motivated by the content of the speech.[2]

Officer Woelk tries to shield himself with qualified immunity, which protects government officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). He argues that even if he was wrong to remove Sheets, the law wasn't clear enough to put him on notice. (Doc. 84 at 6-9.) If the facts are as Sheets alleges—that

---

[2] It might seem odd that Sheets's retaliation claim survives while his viewpoint discrimination claim hits a wall. After all, both stem from the same interaction. But the law draws a distinction here. Viewpoint discrimination is a narrow, specific charge. It requires proof that the government targeted a speaker because of *what* they believe—that the officer acted out of hostility toward the specific opinion expressed. *See McGill v. MacFarlane*, 727 F. Supp. 3d 1268, 1289 (M.D. Fla. 2024) ("Viewpoint discrimination occurs when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). Sheets has not offered facts to show that Officer Woelk cared one way or another about his views. Retaliation, however, is broader. It does not require proof that the officer hated the message. It only requires proof that he acted to punish protected speech. By alleging that Officer Woelk issued the trespass warning to shut down a lawful protest— regardless of whether he did it out of ideological spite—Sheets has done enough to keep his retaliation claim alive.

he was standing on a public sidewalk, speaking on a matter of public concern, and was removed without any valid justification—then Officer Woelk didn't just cross a blurry line; he ignored a boundary that has been clearly marked. *See Merenda v. Tabor*, 506 F. App'x 862, 868 (11th Cir. 2013) ("It is clearly established that it is a violation of the First Amendment to arrest an individual based on his protected speech.").

Officer Woelk resists this conclusion by pointing to the specific confusion of the moment. He argues that a reasonable officer could have doubted whether this particular sidewalk was truly a public forum, or whether Sheets's shouting had crossed the threshold into harassment. (Doc. 84 at 9-12.) But those arguments rely on a version of the facts that differs from the one in the complaint. Officer Woelk wants the Court to judge his actions based on the scene as he describes it—a non-public walkway and a disruptive speaker. We cannot do that. At this stage, we must assess qualified immunity based strictly on the facts Sheets has alleged. And in that narrative, there is no ambiguity: the forum was public, and the conduct was protected. On such facts, qualified immunity provides no refuge. *See, e.g.*, *Reprieto v. Cherokee Cnty. Sch. Dist.*, No. 1:24-CV-01074-ELR, 2025 WL 3691409, at *11 (N.D. Ga. May 30, 2025).

Officer Woelk also attempts to boil this suit down to a single, abstract question: "may an officer rely on the statements of the manager of a property to issue a trespass?" (Doc. 84 at 9.) He argues the answer is a "resounding yes."

13

(*Id.*) But that framing ignores the specific ingredients of this case. Sheets alleges that the trespass wasn't about property management at all; it was about his speech. And he backs that up with the officer's own paperwork. According to Sheets, the incident report specifically calls out the "offensive literature" on his shirt and sign. (Doc. 75 at 16.) When an officer documents the content of a message while removing the speaker, he makes it hard to argue—at least at this stage—that the speech was irrelevant. Whether Officer Woelk was reasonably relying on a manager's complaint about harassment or impermissibly punishing Sheets for his offensive views is a disputed question of fact. We cannot resolve that conflict by simply accepting the officer's version of the story now.

Sheets has told a coherent story of a citizen standing on a public sidewalk, engaging in protected speech, and being silenced by the state. That scenario strikes at the very core of what the First Amendment protects. Officer Woelk may well have a different version of events—one where the sidewalk is a private walkway or the speech amounted to harassment—and he will have the chance to present that evidence at summary judgment or trial. But he cannot force that version upon the Court at the motion-to-dismiss stage. Because Sheets has sufficiently pled a violation of a clearly established right, Officer Woelk is not entitled to qualified immunity and Count II survives.

**Count III—Due Process**

14

Next, Sheets turns his sights on the City of Punta Gorda. He argues that the City's trespass policy violates the Due Process Clause because it acts as a one-and-done deprivation: once you are warned, you are banned for a year, with no hearing and no way to appeal. (Doc. 75 at 22-23.)

"There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[I]t is equally clear that the government must provide the requisite notice and opportunity for a hearing at a meaningful time and in a meaningful manner[.]" *Id.* "If the government fails to comply with the dictates of the Due Process Clause, the aggrieved party can seek compensatory damages and equitable relief under 42 U.S.C. § 1983." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1555, 1557 (11th Cir. 1994)).

A procedural due process claim, like brought here, thus has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden*, 345 F.3d at 1232.

Accepting that the sidewalk where Sheets protested was public property, as the Court must on this record, he has demonstrated the deprivation of a liberty interest. "Plaintiffs have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public

15

generally." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). "[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage, or the right to move to whatsoever place one's own inclination may direct." *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999). Sidewalks are places that have "immemorially been held in trust for the use of the public." *Hague v. CIO*, 307 U.S. 496, 515 (1939). "Because there is a constitutionally protected liberty interest to visit the City's [sidewalks] and [Sheets has] been deprived of access to [that area], [he has] satisfied the first element of [his] due process claim." *McArdle v. City of Ocala, FL*, 519 F. Supp. 3d 1045, 1054 (M.D. Fla. 2021).

The second element, state action, is equally plain. It was Officer Woelk (a City employee, armed and on duty) who stopped Sheets, issued the trespass warning, and backed that paper with the coercive power of the criminal law. "[C]ourts facing similar facts to this case—namely, a government threatening to enforce trespass ordinances during an event held on a traditional public forum—have not questioned state action." *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1104 (N.D. Fla. 2016); *see also Stockstill v. City of Picayune*, No. 1:16CV4-LG-RHW, 2017 WL 3037431, at *2 (S.D. Miss. July 18, 2017).

16

Finally, we look at the process—or rather, the lack thereof. Due process requires, at a minimum, notice and a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Sheets says he got neither. He claims he was given the warning and told to leave immediately. More importantly, he alleges he tried to appeal the ban later, going to the courthouse and asking City employees for a review, only to be told there was "no appeal process" for trespass warnings. (Doc. 75 at 18.) A system that allows an officer to unilaterally ban a citizen from a public area for a year, with no way to challenge the decision or correct a mistake, creates a high risk of erroneous deprivation. *Catron*, 658 F.3d at 1267 ("Even if it is impractical for the City to provide a pre-warning hearing to assure that there are reasonable grounds to support the trespass warning, the City must provide some post-deprivation procedure to satisfy the requirements of the Due Process Clause."). According to the complaint, Officer Woelk's decision on the street corner was final, unreviewable, and etched in stone for a full year. Because Sheets alleges the City provided no procedure to contest that decision, he has sufficiently pled that the process was constitutionally inadequate. *See, e.g.*, *McArdle*, 519 F. Supp. 3d at 1054.

The City tries to sidestep liability by pointing to Charlotte County, which owns the Event Center. According to the City, it was merely enforcing the County's property rights. (Doc. 84 at 23.) But Sheets alleges he was standing

17

on a public sidewalk—a quintessential public forum. When a City police officer issues a trespass warning in such a space, he is not merely acting as a private security guard for a landlord; he is exercising the City's police power to banish a citizen from public property. If the City is going to ban people from public space, it must provide a mechanism to challenge that ban. Because Sheets alleges the City offers no such process, the claim stands.

The City also complains that Sheets has not offered enough proof that its process is constitutionally lacking, dismissing his trip to the courthouse as a "conclusory" anecdote. (Doc. 84 at 23.) But this argument confuses a complaint with a trial. At this stage, Sheets does not need to produce a transcript or an affidavit. He only needs to allege facts that, if true, show a violation. And he has done just that. He does not simply claim the City's process is unfair in the abstract. He alleges he went to the courthouse, sought a hearing, and was told by "numerous city employees" that "there is no appeal process." (Doc. 75 at 18.) That is a specific, factual assertion: he asked for a review, and the City (allegedly) told him there was none. If that actually happened—and we must assume it did—then the City is operating a system with no safety valve. Whether Sheets can prove these facts is a question for another day; for now, his allegations are enough to open the courthouse doors.

**Count IV—Conspiracy**

Finally, we turn to the conspiracy claim. Here, a new figure enters the picture: Officer Cody Waldrop, another member of the Punta Gorda police force. Sheets alleges that Officers Waldrop and Woelk did not just stumble upon this situation; they orchestrated it. (Doc. 75 at 24.)[3]

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Worthy v. City of Phenix City , Alabama*, 930 F.3d 1206, 1224 (11th Cir. 2019). To state a claim, Sheets must plead that these defendants "reached an understanding to violate [his] constitutional rights … and that an actionable wrong occurred." *Id.* We can check off the requirement for an actionable wrong immediately. As detailed above, Sheets has successfully pled that Officer Woelk violated his First Amendment rights by retaliating against his protected speech. The constitutional injury is therefore present. That narrows our focus to the question of agreement.

On that point, the court must be able to infer a shared, unlawful goal to violate the Constitution. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). This requires "some evidence of agreement between the

---

[3] Sheets's conspiracy claim originally cast a wider net. He alleged that not only the police, but also the private security guard, Ron Janz, and the Event Center manager, Michelle Maldonado-Flores, were in on the plot. (Doc. 75 at 24.) But the case against those private citizens has ended. That leaves only the officers.

19

defendants and willful participation." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016). There must be "particularized allegations that a conspiracy exists." *Id.*

Proving a conspiracy is usually hard work, as conspirators rarely sign a contract. But Sheets offers just enough circumstantial evidence to suggest the necessary collusion. He alleges that Officer Waldrop and Officer Woelk explicitly instructed Janz to call them the moment Sheets—and specifically Sheets—arrived on the scene. (Doc. 75 at 24.) Consider the 911 call. Janz did not say, "There's a man causing a disturbance." He said, "I was told by the police department to call. He just showed up here." (*Id.* at 8.) This suggests the fix was in before Sheets even stepped onto the sidewalk. It implies that Officers Woelk and Waldrop had conferred, identified Sheets as a target, and formulated a plan to take action against him upon arrival, regardless of what he was actually doing. When you combine that pre-arranged signal with the swift issuance of the trespass warning, a reasonable jury could infer a meeting of the minds between the two officers to silence Sheets. *See Johnson v. Conway*, No. 1:13-CV-0524-RWS, 2013 WL 5493380, at *5 (N.D. Ga. Sept. 30, 2013). That is enough to move Count IV forward. *See, e.g., Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1192 (11th Cir. 2011) ("[A]n agreement may be inferred from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct[.]").

20

A last word of warning. Just because Sheets gets to open the door to discovery does not mean he will walk out with a victory. Proving a conspiracy is a high bar. It is one thing to allege a secret agreement; it is quite another to prove it with hard evidence. When the full record is developed, it may turn out that Janz misunderstood his instructions, or that the officers' coordination was routine police work rather than a constitutional plot. But at this stage, we do not weigh probabilities; we look only for plausibility. And Sheets's story, backed by the recorded call, crosses that line.

## IV. Conclusion

Sheets has failed to link his treatment to his specific viewpoint, so Count I cannot stand. But on the rest—retaliation, due process, and conspiracy—he has alleged enough to warrant a look at the evidence. The Court is not saying he will win, only that he has earned the right to try. For these reasons, Defendants' Motion to Dismiss (Doc. 84) is **GRANTED IN PART AND DENIED IN PART**. The City and Officer Woelk must answer the surviving claims within fourteen days.

**ORDERED** in Fort Myers, Florida on February 9, 2026.

Kyle C. Dudek
United States District Judge

21