UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

    v.

Case No. 2:25-cv-61-KCD-DNF

MATTHEW WOELK, IN
PERSONAL CAPACITY;  CITY OF
PUNTA GORDA, CAPACITY; AND
CODY WALDROP, IN PERSONAL
CAPACITY;

      Defendants,

                              /

## ORDER

This Court recently allowed Plaintiff Andrew Bryant Sheets to proceed with the lion's share of his civil rights lawsuit against the City of Punta Gorda and police officer Matthew Woelk. (Doc. 104.)[1] Now, another Punta Gorda police officer—Defendant Cody Waldrop—asks to be dismissed from the case. (Doc. 90.) He raises a familiar mix of procedural grievances and substantive defenses. None succeed. For the same reasons the claims against Officer Woelk survived, the case against Officer Waldrop will move forward to discovery.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Because we are here on a motion to dismiss, the facts alleged in the complaint are accepted as true. In January 2021, Sheets decided to protest outside the Charlotte Harbor Event and Conference Center, which was hosting a gun show. A self-described citizen journalist, Sheets wanted to expose what he believed was an illegal database of gun owners maintained by the local sheriff. To get his point across, he brought a sign referencing the "Sheriff's illegal list" and wore a shirt bearing the provocative message, "Fuck Policing 4 Profit." (Doc. 75 at 2-6.)

Not long after Sheets arrived, Ron Janz—a private security guard at the venue—called 911. Janz did not initially call to report a crime in progress. Instead, he told the dispatcher: "I was told by the police department to call. He just showed up here." (*Id.* at 8.) When pressed for details, Janz stated that he had spoken to "Cody" and other officers the day before, and they had instructed him to call the moment Sheets appeared. (*Id.* at 9.)

Officer Woelk responded to the scene and, despite an event center employee confirming that no patrons had complained, he issued Sheets a trespass warning. (*Id.* at 14-16.) That warning required Sheets to leave the property and barred him from returning for a full year.

Sheets subsequently sued Officer Woelk and the City of Punta Gorda under 42 U.S.C. § 1983 for violating his First Amendment rights. (Doc. 1.)

2

During discovery, Sheets apparently obtained the 911 call recording and body-camera footage. Based on that newly discovered evidence, he amended his complaint to add Officer Waldrop as a defendant. Sheets alleges that Officer Waldrop was the "Cody" who orchestrated the 911 call, conspiring with Officer Woelk to target Sheets for his speech before he ever stepped onto the sidewalk. Officer Waldrop now moves to dismiss the conspiracy claim brought against him. (Doc. 90.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at \*3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal

conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

Before getting to the merits, the Court must address a few procedural questions. Officer Waldrop first complains that Sheets added him to this lawsuit without obtaining the required permission. (Doc. 90 at 2-3.) He misreads the record. When the Court instructed Sheets to amend his complaint (Doc. 74), the directive was not a narrow one. The order placed no limits on his permission to amend, and Officer Waldrop identifies none. To the contrary, it was an invitation for Sheets to lay out all his claims, including those against parties he had identified but not yet formally included. *See, e.g., Travelers Prop. Cas. of Am. v. Allen-Bradley Co., LLC*, No. 1:04-CV-1181-CAP, 2005 WL 8154679, at *2 (N.D. Ga. July 27, 2005). But even if the invitation to amend had boundaries, Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave when justice so requires." The Court does so here. Sheets alleges he uncovered new evidence during discovery—specifically, body-camera footage and a 911 call—implicating Officer Waldrop. Adding him to the operative complaint was the proper next step. *See, e.g., Travelers Prop. Cas. of Am.*, 2005 WL 8154679, at *2.

Officer Waldrop next tries to dismiss the complaint as a "shotgun pleading." (Doc. 90 at 3.) The Court has already rejected this argument from

his co-defendants. The shotgun pleading doctrine is designed to prevent complaints that are so vague, disjoined, or repetitive that a defendant cannot figure out what they are being sued for. *See, e.g.*, *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019). Officer Waldrop faces no such mystery. Count IV targets him specifically for conspiracy, and ties that claim to a specific, identifiable event. Because the complaint tells Officer Waldrop exactly what he is accused of doing, the Court will not dismiss the case on a formatting technicality. *See, e.g.*, *Green v. Miami-Dade Cnty.*, No. 08-20016-CIV, 2008 WL 11333589, at *1 (S.D. Fla. Oct. 16, 2008), *Aria Dental Grp., LLC v. Farmers Ins. Exch.*, 528 F. Supp. 3d 1359, 1363 (M.D. Ga. 2021).

Turning to the merits, Sheets alleges Officer Waldrop joined a conspiracy to violate his First Amendment rights. (Doc. 75 at 24.) To state a § 1983 conspiracy claim, a plaintiff must show two things: an agreement to violate constitutional rights, and an actual deprivation of those rights. *Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1224 (11th Cir. 2019).

We can check off the second requirement immediately. As the Court detailed in its prior order, Sheets successfully pled that Officer Woelk violated his First Amendment rights by retaliating against his protected speech. (*See* Doc. 104 at 6-14.) The constitutional injury is therefore present.

So the only question is whether Sheets has plausibly alleged that Officer Waldrop was in on the agreement. He has. The complaint alleges that Officers

5

Waldrop and Woelk instructed the security guard, Ron Janz, to call the police the moment Sheets arrived on the scene. The 911 transcript corroborates this theory. Janz explicitly told the dispatcher, "I was told by the police department to call. He just showed up here." (Doc. 75 at 8-9.) This suggests the fix was in before Sheets even stepped onto the sidewalk. As already explained (Doc. 104), this evidence implies that the officers conferred, identified Sheets as a target, and formulated a plan to take action against him upon arrival, regardless of what he was actually doing. That is the very definition of a meeting of the minds. At the motion-to-dismiss stage, we do not weigh probabilities or demand hard proof of a secret pact; we look only for plausibility. Sheets's story crosses that line. *See, e.g.*, *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1192 (11th Cir. 2011) ("[A]n agreement may be inferred from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct[.]").

Officer Waldrop's bid for qualified immunity also falls short. Qualified immunity protects officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the facts are as Sheets alleges—that Officer Waldrop conspired to remove a peaceful citizen from a public sidewalk solely to silence his protected speech—then Officer Waldrop crossed a clearly established constitutional boundary. It has

long been established that officers cannot use enforcement mechanisms to suppress speech based on personal animus or viewpoint. On the facts alleged, qualified immunity provides no refuge. *See Reprieto v. Cherokee Cnty. Sch. Dist.*, No. 1:24-CV-01074-ELR, 2025 WL 3691409, at *11 (N.D. Ga. May 30, 2025); *see also Merenda v. Tabor*, 506 F. App'x 862, 868 (11th Cir. 2013) ("It is clearly established that it is a violation of the First Amendment to arrest an individual based on his protected speech.").

Just because Sheets gets to open the door to discovery against Officer Waldrop does not mean he will walk out with a victory. As the Court previously explained, proving a conspiracy is "hard work." (Doc. 104 at 20.) When the full record is developed, it may turn out that the officers' coordination was routine police work rather than a constitutional plot. But at this stage, Sheets has earned the right to try.

For these reasons, Officer Waldrop's Motion to Quash Service and Dismiss (Doc. 90) is **DENIED**. He must answer the surviving claim (Count IV) within fourteen days.

**ORDERED** in Fort Myers, Florida on March 11, 2026.

Kyle C. Dudek
United States District Judge